Michael H. HOLLAND, Marty D. Hudson, Elliott A. Segal, and A. Frank Dunham, as Trustees of the United Mine Workers of America 1992 Benefit Plan, and the United Mine Workers of America 1992 Benefit Plan,

and

Michael H. Holland, Thomas O.S. Rand, William P. Hobgood, Marty D. Hudson, Elliott A. Segal, Gail R. Wilensky, and Carl E. Van Horn, as Trustees of the United Mine Workers of America Combined Benefit Fund, and the United Mine Workers of America Combined Benefit Fund, Plaintiffs

v.

DELRAY CONNECTING RAILROAD COMPANY, Defendant

No. 2:03 CV 163 JM.

United States District Court,
N.D. Indiana,
Hammond Division.

March 22, 2004.

David W. Allen, UMWA Health & Retirement Funds, John R. Mooney, Mooney Green Baker & Saindon PC, Jonathan Sokolow, UMWA Health & Retirement Funds, Marilyn Baker, Mooney Green Baker & Saindon PC, Washington, DC, Thomas J. Angell, Jacobs Burns Orlove Stanton & Hernandez, Chicago, IL, for Michael H. Holland, as Trustee of the United Mine Workers of America 1992 Benefit Plan and Trustee of the United Mine Workers of America Combined Benefit Fund, Marty D. Hudson, as Trustee of the United Mine Workers of America 1992 Benefit Plan and Trustee of the United Mine Workers of America Combined Benefit Fund, Elliott A. Segal, as Trustee of the United Mine Workers of America 1992 Benefit Plan and Trustee of the United Mine Workers of America Combined Benefit Fund, A Frank Dunham, as Trustee of the United Mine Workers of America 1992 Benefit Plan, United Mine Workers of America 1992 Benefit Plan, Thomas O. S. Rand, as Trustee of the United Mine Workers of America Combined Benefit Fund, William P. Hobgood, as Trustee of the United Mine Workers of America combined Benefit Fund, Gail R. Wilensky, as Trustee of the United Mine Workers of America combined Benefit Fund, Carl E. Van Horn, as Trustee of the United Mine Workers of America combined Benefit Fund, United Mine Workers of America combined Benefit Fund, Plaintiffs.

Elizabeth M. Bezak, Singleton Crist Austgen and Sears, Munster, IN, John A. Vuono, Vuono & Gray LLC, Pittsburgh, PA, John R. Woodrum, Ogletree Deakins Nash Smoak & Stewart PC—Was/DC, Washington, DC, Richard R. Wilson, Vuono & Gray LLC, Susan C. Indrisano, Vuono & Gray LLC, Pittsburgh, PA, Terence M. Austgen, Singleton Crist Austgen and Sears, Munster, IN, for Delray Connecting Railroad Company, Defendant.

## MEMORANDUM and ORDER

MOODY, Senior District Judge.

The Coal Industry Retiree Health Benefits Act, 26 U.S.C. § 9701 *et seq.* ("the Coal Act"), requires persons (including corporations) who are "related person[s]" to persons who signed a coal wage agreement to fund health benefits for retired employees of the coal industry. 26 U.S.C. § 9701(b)(1), (c)(2); 26 U.S.C. § 9704. As is relevant to this case, even where a corporation itself is not, and never has been, involved in the coal industry, if it is a subsidiary of a corporation engaged in the coal industry or of a corporation that controls other subsidiaries engaged in the coal industry (i.e., the corporation in question has sibling corporations in the coal industry), it may be required to pay annual premiums to the United Mine Workers of America Combined Benefit Fund, one of the plaintiffs[1] here. This obligation, and the Combined Benefit Fund itself, was mandated by Congress in 1992 as part of its plan to remedy "a financial crisis that threatened the viability of the existing health benefit arrangement between miners and mining companies as well as the overall stability of the coal industry." *Davon, Inc. v. Shalala*, 75 F.3d 1114, 1116 (7th Cir.1996).

The UMW Combined Benefit Fund brought this action seeking a judgment: 1) declaring that defendant Delray Connecting Railroad Company ("Delray") is a "related person" under the Coal Act to the National Steel Corporation[2] and several of its coal-industry-engaged subsidiaries; 2) declaring the scope of Delray's liabilities under the Coal Act; and 3) enjoining Delray to post security in the approximate amount of $1 million against its alleged liabilities. Delray has filed a motion for dismissal pursuant to FED. R. CIV. P. 12(b)(1) and (b)(6), arguing that the court has no subject-matter jurisdiction over the case, or alternatively, that if jurisdiction exists the complaint nevertheless fails to state a claim upon which relief can be granted.

## SUBJECT–MATTER JURISDICTION

As to subject-matter jurisdiction, Delray argues that in two separate provisions of the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"),[3] Congress vested exclusive jurisdiction over the operation and acquisition of railroads in the Surface Transportation Board ("STB"), depriving this court of subject-matter jurisdiction. To be blunt, the court finds this argument confused—it conflates preemption issues with subject-matter jurisdiction—and simply wrong.

First, Delray cites 49 U.S.C. § 10501(b), which vests exclusive jurisdiction in the STB over rail transportation, with "transportation" defined broadly. Citing two cases[4] in which United States District Courts have held that § 10501(b) preempts the ability of the states to im-

---

1. For simplicity, the court will use "UMW Combined Benefit Fund" as a collective reference for all plaintiffs.

2. Delray was a wholly-owned subsidiary of National Steel Corporation before that corporation declared bankruptcy. As a result of Delray's sale during the bankruptcy, it is now a wholly-owned subsidiary of the United States Steel Corporation.

3. Pub.L. No. 104–88, 109 Stat. 803, codified in scattered sections of Title 49 of the United States Code. The ICCTA abolished the Interstate Commerce Commission and created in its place the Surface Transportation Board.

4. *Burlington Northern Santa Fe Corp. v. Anderson*, 959 F.Supp. 1288 (D.Mont.1997); *CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n*, 944 F.Supp. 1573 (N.D.Ga.1996). Both cases concern preemption of state laws directly regulating a railroad's authority to maintain or close stations, depots, ticket offices, etc.

pose economic regulation on railroads, Delray notes that the Supreme Court has said that the Coal Act is an "economic regulation." *Eastern Enterprises v. Appel*, 524 U.S. 498, 523, 118 S.Ct. 2131, 2146, 141 L.Ed.2d 451 (1998). Delray then concludes that "application of the Coal Act to Delray would be contrary to the clear intention of Congress to deregulate the rail industry by preempting regulatory authority over rail carriers and vesting it exclusively in the STB." Memorandum in Support of Delray's Motion to Dismiss ("Memorandum in Support") at 13.

■ Somehow, without explanation, Delray got switched off the subject-matter jurisdiction track onto a preemption siding. The concept of subject-matter jurisdiction refers to the court's power to hear the case. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Delray never explains how, if this court has no power to hear the case, it has the power to determine whether 49 U.S.C. § 10501(b) preempts the Coal Act, or, conversely, how a finding that the Coal Act is preempted would implicate this court's subject matter jurisdiction. Conversely, Delray fails to explain why this court should pay any heed to the District Court decisions it cites concerning the

preemptive effect of 49 U.S.C. § 10501(b), given that under Delray's reasoning those courts lacked subject-matter jurisdiction and so any holding concerning preemption would be meaningless.[5] For that matter, Delray overlooks or ignores the fact that neither of the cases it cites even *mentions* the concept of subject-matter jurisdiction.

■ In short, Delray's argument is completely confused. Although 49 U.S.C. § 10501(b) may preempt state law, as to claims in federal court involving other federal statutes, § 10501(b) states a rule of primary jurisdiction: it has nothing to do with either preemption or subject-matter jurisdiction. *See Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir.2004) ("[f]ederal statutes do not 'preempt' other federal statutes"); *but cf. Jackson v. Consolidated Rail Corp.*, 717 F.2d 1045, 1054 (7th Cir.1983) (preemptive effect of Railway Labor Act, giving exclusive jurisdiction over pendent state-law wrongful discharge claim to National Railroad Adjustment Board, deprived district court of subject-matter jurisdiction.)[6] The doctrine of primary jurisdiction simply means that this court has the option to stay the case and refer the issue to the STB for resolution, if the court believes that the issue falls out-

---

5. The courts' holdings are not meaningless, because both cases concern preemption of state law. In that circumstance preemption is an affirmative defense and does not implicate subject-matter jurisdiction. *Baker v. IBP, Inc.*, 357 F.3d 685, 688 (7th Cir.2004).

6. Dissenting in part, Judge Posner described the issue as one of primary, not exclusive, jurisdiction, disagreed that the district court lacked subject-matter jurisdiction, and made the point the court makes here: "If a case is not within the jurisdiction conferred on the federal courts by Article III, they have no power to decide whether Congress has withdrawn their jurisdiction over a particular claim; they must dismiss before reaching that issue." *Id.* at 1058 (Posner, J., concurring in part and dissenting in part). Assuming that it

is still correct that the National Railroad Adjustment Board has exclusive jurisdiction over minor disputes arising from collective-bargaining agreements, *see Chicago, Milwaukee, St. Paul and Pacific R. Co.*, 852 F.2d 960, 965 (7th Cir.1988), the absence of cases similar to *Jackson* outside of that context, and more recent cases such as *Baker* which follow the reasoning expressed in Judge Posner's dissent, indicate that the issue in the present case is not one involving subject-matter jurisdiction. *Cf. Massey v. Helman*, 196 F.3d 727, 737 (7th Cir.1999) (where administrative procedures provided by Civil Service Reform Act are exclusive remedy for federal employee, correct basis for dismissal of *Bivens* claim is failure to state a claim upon which relief can be granted, not lack of subject-matter jurisdiction.)

side conventional judicial wisdom and an agency with expertise should be given "first crack." *Baker,* 357 F.3d at 688; *Arsberry v. Illinois,* 244 F.3d 558, 563–64 (7th Cir.2001).

■ Delray has not asked for a stay, however, but for dismissal on the ground that the court lacks subject-matter jurisdiction. For the reasons just given, the court will not dismiss this case on the basis that 49 U.S.C. § 10501(b) deprives the court of subject-matter jurisdiction. However, the recognition that the question is one of primary jurisdiction dovetails nicely into Delray's second argument, which is that the court lacks subject-matter jurisdiction because only the STB has jurisdiction to decide whether the Coal Act is preempted.

This again confuses primary jurisdiction with subject-matter jurisdiction. Delray's argument is that because Delray was acquired by United States Steel Corporation ("US Steel") in an "exempted" transaction subject to the STB's authority to regulate certain transactions involving changes in ownership or control of rail carriers,[7] Delray is exempt from "all other law" as is necessary for it to operate its business:

> The authority of the Board under this subchapter is exclusive. A rail carrier or corporation participating in or resulting from a transaction approved by or exempted by the Board under this subchapter may carry out the transaction, own and operate property, and exercise control or [sic] franchises acquired through the transaction without the approval of a State authority. A rail carrier, corporation, or person participating in that approved or exempted transaction is exempt from the antitrust laws and from all other law, including State

and municipal law, as necessary to let that rail carrier, corporation, or person carry out the transaction, hold, maintain, and operate property, and exercise control or [sic] franchises acquired through the transaction.

49 U.S.C. § 11321(a).

Relying on *Railway Labor Executives' Ass'n v. Southern Pacific Transp. Co.,* 7 F.3d 902 (9th Cir.1993), Delray argues that the issue whether it is necessary to exempt Delray from the Coal Act in order for it to hold, maintain and operate its property falls within the STB's exclusive jurisdiction.[8] In *Railway Labor Executives' Ass'n,* the Court of Appeals for the Ninth Circuit reasoned that because the STB has the exclusive authority to examine, impose conditions on, and approve ownership and control transactions involving rail carriers, it follows that "it should have exclusive authority to clarify the scope of its own approval and the corresponding breadth of the section 11341(a) exemption." *Railway Labor Executives' Ass'n,* 7 F.3d at 906.

One problem with this argument is that it appears that not even the STB views its jurisdiction as exclusive in this sense. A decision Delray cites in support of its alternative contention that the complaint fails to state a claim, *Cities of Auburn and Kent, Wa.—Petition for Declaratory Order—Burlington Northern Railroad Company—Stampede Pass Line, STB Finance Docket No. 33200,* 1997 WL 362017 (1997) ("*Stampede Pass* "), contains an illuminating passage that Delray overlooked.

In *Stampede Pass* the STB had approved Burlington Northern's reacquisition of the Stampede Pass line from the Washington Central, and approved Bur-

---

7. 49 U.S.C. § 11323; 49 U.S.C. § 10502.

8. "Exclusive" jurisdiction is "the original and strongest meaning of 'primary jurisdiction.' "

*In re StarNet, Inc.,* 355 F.3d 634, 639 (7th Cir.2004) (*citing United States v. Western Pacific R.R.,* 352 U.S. 59, 64, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956).

lington Northern's plan to make extensive improvements to the track, tunnels and service buildings along the track.[9] The Cities of Auburn and Kent, Washington, complained to the STB that its approval had left the Stampede Pass improvements "virtually unregulated" and sought a declaration that state and local environmental permitting requirements were not preempted. 1997 WL 362017 at *3.

Finding that state and local environmental regulations could delay or foreclose the project it had already investigated and approved, the STB opined that it "believe[d] that state or local laws that would impose a local permitting or environmental process on BN's operations on, or maintenance of, the Stampede Pass line are preempted to the maximum extent permitted by the Constitution." 1997 WL 362017 at *5. In arriving at this conclusion, however, the STB stated:

> We will not attempt here to analyze any particular ordinances or local regulatory requirements; the review of individual ordinances or state or local regulations is beyond the scope of our limited inquiry in this case and is *more appropriately an issue for the courts.*

1997 WL 362017 at *3 (emphasis added.) The fact that the STB itself believes that specific preemption issues are for the courts to decide weighs against a decision that the STB has exclusive jurisdiction over the present case.

A second problem with Delray's exclusive jurisdiction argument, and reliance on *Railway Labor Executives' Ass'n,* is that it ignores contrary precedent from the Court of Appeals for the Seventh Circuit, which binds this court. In *Harris v. Union Pacific R.R.,* 141 F.3d 740 (7th Cir.1998), the court rejected reading *Railway Labor Executives' Ass'n* to mean that the STB "is

forever in charge of all legal disputes related to a [railroad] merger," *Id.* at 744, and noted "[a]t all events, *[Railway Labor Executives' Ass'n v.] Southern Pacific* does not represent this circuit's approach to the relation between Commission and court." *Id.* at 743. The court concluded that just as a bankruptcy court's control over a debtor ends once a reorganization plan is confirmed,

> [s]o too with decisions by the Commission or [Surface Transportation] Board approving mergers. Congress gave the agency the power to supersede other laws; use of that power must be respected. But if the Commission or Board approves a merger without directly or by necessary implication using this power, courts should continue to resolve disputes under generally applicable rules of law. None of the relief [plaintiffs] Harris or Walton seeks would be incompatible with the Commission's order approving the merger. Therefore none of the claims is foreclosed by the Commission's decision.

*Id.* at 744.

Delray did not even mention *Harris* in its opening brief, only attempting to distinguish the case in its reply brief after the UMW Combined Benefit Fund argued in response to the motion to dismiss that *Harris* is dispositive. Noting that *Harris* "represents a departure from all other circuits and ... has not been followed in relevant part in any jurisdiction," Reply of Defendant in Support of Motion to Dismiss ("Reply") at 5, Delray's main argument is that *Harris* adopts an "overly simplistic 'bright line' ... [which] creates several loopholes that allow creditors or third parties to forum shop and otherwise evade the exclusive subject matter jurisdiction of the

---

**9.** The court's summary of *Stampede Pass* omits and simplifies some of the procedural details.

STB by merely waiting to file a claim until after the consummation of a rail transaction." Reply at 6.

Arguments concerning *Harris*'s wisdom, or perceived lack thereof, must be addressed to the Court of Appeals. This court must apply the existing law of this circuit. *Gacy v. Welborn*, 994 F.2d 305, 310 (7th Cir.1993); *see also Donohoe v. Consolidated Operating & Production Corp.*, 30 F.3d 907, 910 (7th Cir.1994). In explaining how *Harris* creates "loopholes," however, Delray does suggest a difference between *Harris* and the present case that may be so large that *Harris* does not dictate the outcome here.

In *Harris*, the observation that courts should continue to resolve disputes when the STB approves a merger without directly or impliedly exercising its power to supersede other laws came in the context of a transaction that was fully investigated and approved by the Interstate Commerce Commission (now STB.) Because the merger by which U.S. Steel acquired Delray from National Steel was an exempted transaction, investigation and approval did not occur. The STB's decision was limited to a finding that regulation of the merger was unnecessary, and so there was neither need nor opportunity for the STB to comment on what other laws might have to be superseded to carry out the transaction.

It is this court's conclusion that this argument proves too much. The exemption provision that U.S. Steel and Delray jointly invoked to facilitate Delray's acquisition without the necessity of STB investigation and approval provides, as pertinent to this question:

> In a matter related to a rail carrier providing transportation subject to the jurisdiction of the Board under this part, the Board, to the maximum extent consistent with this part, shall exempt ... a transaction ... whenever the Board finds that the application in whole or in part of a provision of this part ... *is not necessary to carry out the transportation policy of section 10101* of this title[.]

49 U.S.C. § 10502(a) (emphasis added.) In other words, the transaction in this case was exempted from the STB's oversight on the basis that regulation, investigation and approval was unnecessary to serve national rail transportation policy. Having sought, and obtained, exemption from the STB's regulatory authority, the court cannot now give great credence the overarching concern expressed through Delray's argument, that Congress' legislative scheme to deregulate the rail industry and give the STB jurisdiction over all matters concerning rail transportation is preserved only if the STB has exclusive jurisdiction to determine whether the Coal Act is trumped by 49 U.S.C. § 11321(a).[10]

That U.S. Steel and Delray asked for a decision that the transaction was exempt, rather than seeking, or allowing, full investigative review and approval, also serves as a partial refutation of the other reason Delray gives for distinguishing *Harris*. Delray argues that *Harris* deals with a dispute that arose after the transaction was consummated, but in the present case

---

**10.** Despite the transaction being exempted from the STB's regulatory authority, § 11321(a) of course still expressly exempts all other laws as is necessary for Delray to operate. The court only means that given the exemption, there is no strong reason to distinguish *Harris* and find that only the STB, and not this court, has jurisdiction to determine whether it is necessary to exempt Delray from

the Coal Act. In addition, by saying that U.S. Steel "sought" to exempt the transaction, the court does not mean to overstate the case. The transaction was within an entire class of transactions that the STB has found to be exempt, and U.S. Steel was able to obtain exemption simply by filing a notice of exemption pursuant to 49 CFR § 1180.2(d)(2).

the UMW Combined Benefit Fund filed suit fourteen days prior to the transaction closing. While *Harris* criticized the notion that § 11341(a)[11] means that the STB has jurisdiction over disputes involving a railroad acquisition "forever," Delray posits that, at the very least, the STB's jurisdiction should last until the transaction is consummated. Thus, Delray takes the UMW Combined Benefit Fund to task for not using available administrative remedies, *i.e.*, objecting to the proposed exemption and requesting the STB to issue a decision on applicability of the Coal Act to Delray, or, even now, petitioning the STB to set the exemption aside so that it might make that decision.

This shoe can just as easily be put on the other foot. Although Delray states—in bold print—that the UMW Combined Benefit Fund still has administrative options available, Reply at 12, it has not explained to the court's satisfaction that this is true. Delray cites only the Notice of Exemption published by the STB in the Federal Register, 68 FR 8076 (Feb. 19, 2003), which included the information that exemptions are void *ab initio* when the party seeking exemption submits false or misleading information, and that a petition to revoke the exemption pursuant to 49 U.S.C. § 10502(d) can be filed at any time. There is no indication that U.S. Steel submitted false or misleading information that would allow the UMW Combined Benefit Fund to seek to have the exemption declared void *ab initio*.

Moreover, § 10502(d) provides that the STB may revoke an exemption when it finds that application to the transaction, in whole or in part, of Title 49, Part A of the United States Code, is necessary to carry out the national transportation policy expressed in 49 U.S.C. § 10101. Being realistic, in this case it would seem necessary to revoke the exemption in order to carry out transportation policy only assuming that it is a foregone conclusion that the STB would declare that Delray is exempt from the Coal Act. In other words, Delray is asking the UMW Combined Benefit Fund to advance the ball towards Delray's goal, *i.e.*, its defense that the Coal Act does not apply. The court sees no reason why Delray itself could not request the STB to revoke its exemption only for the purpose of determining whether Delray should be exempted from the Coal Act.[12]

In fact, although it criticizes Delray for not objecting at the time the STB published the notice of exemption, Delray itself could have taken earlier action. Delray has not explained why it was not entirely foreseeable that obligations under the Coal Act might apply to Delray, thus, rather than seeking exemption of the transaction, U.S. Steel could have requested the STB to investigate and make a decision regarding the Coal Act in the first place. Anticipating the court's thinking, Delray argues that, at the time U.S. Steel sought exemption of the Delray acquisition, it provided required information to the STB but:

> There is nothing in these informational requirements that obligated the Delray, even if it had been aware of Plaintiffs' claim, to alert the STB to the existence of such a claim. It is significant that the STB has recently reaffirmed that:

**11.** 49 U.S.C. § 11341 was the nearly identical statutory predecessor to the provision under consideration here, § 11321.

**12.** Although Delray states, in bold print, that an exempt transaction can be subjected to full review by the STB "only if a third party petitions the STB to negate such exemption,"

Reply at 7, Delray has not cited any authority for this proposition. As noted above, however, the court reads *Stampede Pass* to mean that the STB thinks that specific preemption decisions should be made by the courts. This reading only reinforces the conclusion that the present case should not be dismissed.

"[p]arties seeking approval of a transaction, whether by application or exemption, have never been required to identify all anticipated changes that might affect rights.... [T]here is no legal requirement for identification because 49 U.S.C. § 11341(a) [now § 11321(a) ] is 'self-executing,' that is, its immunizing power is effective when necessary to permit the carrying out of a project."

Reply at 12 (emphasis added by Delray, citations omitted); *see also Missouri Pacific R. Co. v. United Transp. Union General Committee of Adjustment,* 580 F.Supp. 1490, 1501 (E.D.Mo.1984) (exemption is self-executing.) [13]

While U.S. Steel and Delray may not have been *required* to alert the STB, they certainly were not prohibited from doing so, assuming they knew of the claim or the potential for such a claim. In any event, the fact that § 11321(a) is self-executing does not bolster Delray's argument concerning subject-matter jurisdiction. That the exemption is self-executing in no way suggests that the STB has exclusive jurisdiction to decide whether that execution has occurred, *i.e.,* to decide that Delray is exempted from the Coal Act.

In sum, for the foregoing reasons, the court finds that Delray has not demonstrated that the court lacks subject-matter jurisdiction over the present case.

## FAILURE TO STATE A CLAIM

█ It is well known that a complaint may be dismissed for failure to state a claim upon which relief may be granted pursuant to FED.R.CIV.P 12(b)(6) only when the court is satisfied beyond doubt that no imaginable set of facts could be proved that is consistent with the allegations of the complaint and which would entitle the plaintiff to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *U.S. Gypsum Co. v. Indiana Gas Co., Inc.,*350 F.3d 623, 628 (7th Cir.2003); *Hickey v. O'Bannon,* 287 F.3d 656, 657 (7th Cir.2002). Delray posits such is the case here, using an abbreviated and slightly modified version of its argument against the existence of subject-matter jurisdiction.

Thus, the court gives a nutshell version of Delray's argument. The ICCTA preempts all other federal and state law remedies applicable to common carrier railroads, through this provision: "Except as otherwise provided in this part, the remedies provided under this part with respect to *regulation of rail* [14] transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b) (emphasis added.) This preemption provision has been broadly interpreted and "has preempted laws in a number of areas including economic regulation, environmental regulation and public safety." Memorandum in Support at 18. The Supreme Court has said the Coal Act is economic regulation. *Eastern Enterprises,* 524 U.S. at 523, 118 S.Ct. at 2146. Application of the Coal Act to Delray would have a devastating economic impact: Delray has annual revenues of less than $20 million, and because plaintiffs seek to impose an annual liability of approximately $4 million, Delray's ability to

---

13. The court notes that because the STB views the exemption as self-executing, it is not clear that it would, in a decision approving a transaction, expressly or impliedly indicate that it was exercising, in the words of *Harris,* its "power to supersede other laws."

14. The court notes that Delray omitted the italicized language from its quotation of this provision, without indicating the deletion. The court ascribes sloppiness, rather than an intent to mislead, to this mistake. Counsel for Delray is advised to proofread more carefully in the future.

continue in business would be jeopardized. Therefore, any application of the Coal Act to Delray is preempted.[15]

As support for its argument that Congress intended for the ICCTA to broadly preempt other regulation of railroads, Delray cites the Joint Explanatory Statement of the Committee Conference on the provision finally enacted into law, which states:

> Also integrated into the statement of general jurisdiction is the delineation of the exclusivity of Federal remedies with respect to the regulation of rail transportation.... The Conference provision retains his general rule, while clarifying that the exclusivity is limited to remedies with respect to rail regulation—not State and Federal law generally. For example, criminal statutes governing antitrust matters, not pre-empted by this Act, and laws defining such criminal offenses as bribery and extortion, remain fully applicable because they do not generally collide with the scheme of economic regulation (and de-regulation) of rail transportation.

Memorandum in Support at 17, quoting Conf. Rep. on H.R. 2539, ICC Termination Act of 1995, 141 Cong. Rec., H15036 (1995).

This is the type of double-speak that causes the court to agree with Justice Scalia's observation that "committee reports ... are increasingly unreliable evidence of what the voting Members of Congress actually had in mind." *Blanchard v. Bergeron*, 489 U.S. 87, 99, 109 S.Ct. 939, 947, 103 L.Ed.2d 67 (1989). On the one hand the committee report tells us that only remedies in respect to regulation of rail transportation are preempted, not state and federal law generally, suggesting that any law of general application would not be preempted. On the other hand, the justification for not exempting application of criminal laws is that they "do not generally collide with the scheme of economic regulation (and de-regulation) of rail transportation." This suggests that laws that do impact rail transportation—even though they might be laws of general application—are preempted. It is this latter interpretation that Delray argues is correct.

Delray's desired interpretation is supported by the statement that the "STB and various courts have found that the ICCTA has preempted laws in a number of areas including economic regulation, environmental regulation and public safety." Memorandum in Support at 18. That statement is supported by citations to the following authorities, in this order: *Dakota, Minnesota & Eastern Railroad Corp.*

---

**15.** Preemption comes in one (or more) of three types: express, implied because Congress has completely occupied a field (field preemption), or implied because of a conflict between state and federal law (conflict preemption). *Boomer v. AT & T Corp.*, 309 F.3d 404, 417 (7th Cir.2002) Delray has not clearly stated which type of preemption it is arguing applies in the present case. For that reason, and because the existence of an express preemption clause usually indicates that implied preemption analysis is unnecessary (but does not foreclose that possibility), *Freightliner Corp. v. Myrick*, 514 U.S. 280, 288, 115 S.Ct. 1483, 1488, 131 L.Ed.2d 385 (1995), the court has not gone beyond consideration of the express preemptive language found in 49 U.S.C.

§ 10501(b). *See City of Auburn v. United States Government*, 154 F.3d 1025, 1031 n. 7 (9th Cir.1998) (finding field and conflict preemption analysis unnecessary because of express language in 49 U.S.C. § 10501(b).)

The court also notes that cases discussing the three types of preemption inevitably do so in regard to federal preemption of *state* law. The court has not forgotten, as noted above at p. 5, that the Court of Appeals believes that "[f]ederal statutes do not 'preempt' other federal statutes[.]" *Baker*, 357 F.3d at 688. The express language enacted by Congress at issue in this case, however, uses the word "preempt" to describe the effect of one set of federal remedies on other federal laws.

*v. State of South Dakota,* 236 F.Supp.2d 989 (D.S.D.2002); *Burlington Northern Santa Fe Corp. v. Anderson,* 959 F.Supp. 1288 (D.Mont.1997); *Cities of Auburn and Kent, Wa.—Petition for Declaratory Order—Burlington Northern Railroad Company—Stampede Pass Line, STB Finance Docket No. 33200,* 1997 WL 362017 (1997), *aff'd, City of Auburn v. United States Government,* 154 F.3d 1025 (9th Cir.1998); *Wisconsin Central, Ltd. v. City of Marshfield,* 160 F.Supp.2d 1009 (W.D.Wis.2000). The court has reviewed each.

In *Dakota, Minnesota & Eastern Railroad Corp. v. State of South Dakota,* 236 F.Supp.2d 989 (D.S.D.2002), the railroad sought and received permission from the STB to build new rail lines in South Dakota, Wyoming and Minnesota and to replace much of its existing track. In the STB's Final Environmental Impact Statement regarding the proposal, the railroad was encouraged to attempt to purchase all land necessary, and to exercise its eminent domain rights under state law only as a last resort. *Id.* at 997.

While the railroad was waiting for the STB's decision, South Dakota made changes to its eminent domain law. Prior to the change, the law stated: "A railroad may exercise the right of eminent domain in acquiring right-of-way as provided by statute." *Id.* After the change, the law provided that a railroad could exercise the right of eminent domain only if approved to do so by the governor or, at the governor's request, the state's Transportation Commission, upon a determination that the railroad had met its burden of proving "by a preponderance of the evidence that the exercise of the right of eminent domain is a public use consistent with public necessity." S.D. St. § 49–16A–75.2; *Id.* Among other factors necessary to meet this burden:

A railroad's exercise of the right of eminent domain is a public use consistent with public necessity only if the use of eminent domain:

(1) Has as its purpose providing railroad transportation to shippers in South Dakota for commodities produced, manufactured, mined, grown, used, or consumed in South Dakota;

(2) Is proposed by an applicant with the financial resources necessary to complete the proposed construction or reconstruction along with any related facilities, construction, or mitigation which are necessary to protect against harm to the public safety, convenience, or other adverse socioeconomic or environmental impact, as evidenced by a financing commitment from a lender or an investor or a combination of each with adequate capitalization and resources to fulfill its commitment to build and complete the project; [and] . . . . . . . . . . .

(4) Is proposed by an applicant who has filed a plat, as required by § 49–16A–64, and that plat sets forth the route of the road to be constructed or reconstructed, identifies each affected landowner, and specifies the location, along with construction methods and engineering specifications for all main lines, sidings, yards, bridges, crossings, safety devices, switches, signals, and maintenance facilities[.]

S.D. St. § 49–16A–75.3. Not surprisingly, the court found that 49 U.S.C. § 10501(b) expressly preempted portions of the South Dakota statutory scheme, not only because of its indirect impact on rail transportation (the evidence showed that proposed new trackage would not be built because financing would be impossible to obtain due to the uncertainty that eminent domain could be used), but also because some provisions, such as (2) and (4) above, were direct regulation of rail transportation.

*Dakota, Minnesota & Eastern Railroad Corp.*, 236 F.Supp.2d at 989, 1007–10.

Other parts of the court's decision hurt, rather than help, Delray's argument. For example, another subsection of the South Dakota statute provided that to satisfy its burden of showing a public use consistent with a public necessity, a railroad using eminent domain would be required to provide free easements over its acquired land for public utilities, with the state regulating their location. S.D. St. § 49–16A–75.3. The railroad argued that this provision was preempted because "forced placement of utilities on railroad property will inevitably result in conflict between the railroad and such utilities." *Id.* at 1010. The court disagreed, stating:

> Requiring an easement over a portion of a railroad and regulating its location and placement clearly impacts the railroad, but the State is not dictating the manner of construction of the railroad. The statute only deals with the placement of the easement, not the railroad itself. . . . [T]here is no evidence that requiring the easement will make the PRB project financially unfeasible and thus halt construction. In requiring the right-of-way, the State has not delved into an area preempted by the ICCTA.

*Id.* at 1011. In the court's view, *Dakota, Minnesota & Eastern Railroad Corp.* on the whole suggests, at best, that Delray's argument that the Coal Act must be preempted because of the devastating degree of its impact poses a factual question on which Delray must offer proof that may not be used as a reason to dismiss the complaint for failure to state a claim.[16]

In *Burlington Northern Santa Fe Corp. v. Anderson*, 959 F.Supp. 1288 (D.Mont. 1997), a Montana statute required railroads to maintain and staff shipping facilities and passenger facilities to the extent they were maintained on January 1, 1987, unless able to satisfy the Montana Public Service Commission ("MPSC") that a facility was not necessary for the public convenience. *Id.* at 1291. Prior to the enactment of the ICCTA, the MPSC had on several occasions refused to allow the railroad to close a number of its "station agencies," which the court explained were "commonly referred to as 'depots' in Montana's rural setting." *Id.* at n. 1. After the enactment of the ICCTA, the railroad brought suit seeking a judgment declaring that the Montana law was preempted.

The court found the state statute expressly preempted:

> [W]hen section 10501(b) grants exclusive jurisdiction to the [Surface Transportation] Board over "transportation by rail carriers," it logically includes the agency as the terminal, property, facility, depot, and services related to the movement or interchange of passengers.

*Id.* at 1294. In addition to express preemption, the court held alternatively that Congress had preempted the entire filed of economic regulation of railroads and:

> [S]tate regulation of the closure, consolidation or centralization of agencies has a direct and substantial effect on the field of economic regulation of railroad transportation. Thus, the state regulation at issue falls squarely in the preempted field of economic regulation[.]

*Id.* at 1296. As an alternative holding, the statement is dicta. In any event, whatever

---

**16.** In their response plaintiffs noted that it is inappropriate to seek dismissal on a factual issue such as this. In the last sentence of its reply, Delray in bold print states that "this merely underscores the need to put the issue before the STB, the expert body which has the exclusive subject matter jurisdiction to analyze the impact the Coal Act would have on Delray," reiterating the point that Delray seeks dismissal rather than a stay of the case and referral to the STB.

its persuasive weight might be, the fact remains that the case, like *Dakota, Minnesota & Eastern Railroad Corp.*, concerns state laws that directly regulate aspects of rail transportation, not economic regulations in general shown to have a monetary impact on the railroad.

Delray next cites a decision made by the STB, *Cities of Auburn and Kent, Wa.—Petition for Declaratory Order—Burlington Northern Railroad Company—Stampede Pass Line, STB Finance Docket No. 33200*, 1997 WL 362017 (1997), *aff'd, City of Auburn v. United States Government*, 154 F.3d 1025 (9th Cir.1998), as holding that the ICCTA "preempts local environmental permitting laws that have the impact of economic regulation." Memorandum in Support at 19. In that decision, as explained at more length above at pp. 7–8, the municipalities at issue sought a declaration that a project to replace and renovate track and facilities, already approved by the STB, was nonetheless subject to local environmental laws that required a review process and permits to issue before the project could be carried out. The STB, in a decision affirmed by Court of Appeals, found any such state and local laws preempted:

> [A] state or local permitting process implies the power to deny authorization, which could frustrate the activity that is subject to federal control. If BN were unable to undertake the projects, or if its ability to commence projects to maintain and upgrade its facilities were substantially delayed pending resolution of a state or local permitting or environmental process, its ability to carry rail traffic over the Stampede Pass line could be greatly inhibited, if not foreclosed.

1997 WL 362017 at *6.

This reasoning, and the underlying facts, are similar to those in the last case cited by Delray, *Wisconsin Central, Ltd. v. City of Marshfield*, 160 F.Supp.2d 1009 (W.D.Wis.2000), in which the municipality sought to condemn railroad property to build a highway overpass, which would have required the railroad to tear up 6,800 feet of track. The municipality argued that Congress intended to preempt only "direct economic regulation of rail transportation" while all it was doing was requiring the railroad to relocate the passing track in the interest of safety. *Id.* at 1013. The court, finding application of the condemnation laws preempted, answered:

> [C]ondemnation is regulation. In using state law to condemn the track defendant is exercising control—the most extreme type of control—over rail transportation as it is defined in section 10102(9). Characterizing condemnation as relocation does not change this conclusion. Were the condemnation properly considered a relocation, the act of forcing WCL to relocate its passing track is no less an exercise of control over transportation by the City through its laws than is outright condemnation.

*Id.* (footnote omitted.) The court then described the *Stampede Pass* decision on which Delray relies as showing that "more than just state laws specifically designed to regulate rail transportation" are preempted: "[e]nvironmental laws—statutes of general application—have been found preempted under the ICCTA when applied to *facilities and property constituting rail transportation.*" *Id.* at 1014 (emphasis added).

Unlike *Dakota, Minnesota & Eastern Railroad Corp.* and *Burlington Northern Santa Fe Corp.*, which involved statutes expressly regulating aspects of rail transportation, these latter two authorities do involve laws of general application. Nevertheless, in *Stampede Pass* and *Wisconsin Central, Ltd.* the municipal authorities

were attempting to use those laws to directly regulate rail transportation, in *Stampede Pass*, exercising environmental review and approval over construction, and in *Wisconsin Central, Ltd.*, requiring the railroad to tear up track. What all four authorities which Delray cites have in common is that they involve *state* laws being used to directly regulate rail transportation. Delray has not cited a single authority holding that a federal law of general application is preempted by the ICCTA solely because it has an economic impact on a railroad's operations. The court views this distinction as important, because Delray's reasoning, taken to its logical conclusion, could mean that railroads cannot be required to put postage on their mail.

Moreover, once again Delray overlooks a passage in its own authority that suggests the STB does not view preemption under the ICCTA as broadly as Delray claims. In its *Stampede Pass* decision, the STB found that state environmental laws of general applicability were preempted when applied to railroads. However, the STB also noted, apparently with approval, that an earlier, informal and non-binding opinion as to whether Washington's state and local environmental permitting laws were preempted the STB's Secretary had opined that the railroad "must comply with the safety and environmental requirements imposed by other federal statutes, such as the Clean Water Act's National Pollution Discharge System program involving water quality issues relating to spills into lakes and streams." 1997 WL 362017 at *2 n. 7. This is a clear indication that the STB itself sees some difference in the preemptive scope of 49 U.S.C. § 10501(b) between state law of general applicability and federal law of general applicability. Thus, while the Coal Act may be a form of economic regulation, because—in the words of the Joint Explanatory Statement cited by Delray—"exclusivity is limited to remedies with respect to rail regulation— not state and federal law generally," the court does not believe that preemption of the Coal Act by § 10501(b) is so plain that it can be said that the complaint fails to state a claim.

For the reasons given above, Delray has not demonstrated to the court's satisfaction that subject matter jurisdiction does not exist, or that the ICCTA so completely preempts other federal economic regulations of general applicability, specifically, the Coal Act, that plaintiffs' complaint fails to state a claim. As a result, the motion to dismiss plaintiffs' complaint filed by defendant Delray Connecting Railroad Company is **DENIED.**

**SO ORDERED.**