**WISCONSIN CENTRAL LTD., Plaintiff,**

v.

**THE CITY OF MARSHFIELD, Defendant.**

No. 99–C–0636–S.

United States District Court, W.D. Wisconsin.

Feb. 10, 2000.

---

James A. Fletcher, Fletcher & Sippel LLC, Chicago, IL, for Plaintiff.

Frank Remington, Wisc. Dept. of Justice, Madison, WI, for Defendant.

## MEMORANDUM AND ORDER

SHABAZ, District Judge.

Plaintiff Wisconsin Central Ltd. (WCL) commenced this action under 28 U.S.C. §§ 1331 and 1337 for declaratory judgment and injunctive relief against defendant City of Marshfield (City). Plaintiff has moved for partial summary judgment on Count I of its Second Amended Complaint that federal law preempts the City's efforts under Wisconsin law to condemn property used in rail transportation.

## BACKGROUND

WCL is an Illinois corporation with its principal place of business in Rosemont, Illinois. It is a rail common carrier engaged in the business of interstate rail transportation service in Wisconsin, Minnesota, Michigan and Illinois. The City of Marshfield is located in Wood County and is a municipal corporation organized under the laws of the State of Wisconsin.

One of WCL's primary rail lines runs through the City and connects points in Minnesota to Chicago. The WCL line in Marshfield is used in interstate and international commerce and consists of both a main track line and a passing track. WCL's passing track is 14,475 feet long. A passing track is an integral component in the operation of a single-track line as it enables multiple trains to use one main track by allowing trains on the same track heading in opposite directions to pass each other.

State Highway 13 goes through the City of Marshfield. The highway crosses both WCL's main track and its passing track in the City. The City and the Wisconsin Department of Transportation (DOT) plan to realign the highway in an effort to reduce traffic accidents. The proposed realigned Highway 13 will run parallel to WCL's line, but will continue to intersect it within the City.

DOT and the City plan to construct an overpass where the realigned Highway 13 will cross under WCL's line. However, the proposed single-track overpass would accommodate the WCL's main line, but not the passing track. The DOT and City's plan calls for the removal of over 6,800 feet (forty percent) of WCL's passing track.

Acting as an agent for the City the DOT began condemnation proceedings against that portion of the WCL's passing track under Chapter 32 of the Wisconsin Statutes on August 2, 1999. WCL has unsuccessfully requested the DOT to close proceedings.

WCL commenced this action against the City on October 29, 1999. Its complaint contains three claims. WCL's first claim, that federal law preempts the City's application of the Wisconsin statute, is before the Court on summary judgment.

## MEMORANDUM

Plaintiff moves for partial summary judgment under Rule 56, Federal Rules of Civil Procedure, that plaintiff will prevail on its motion if it can show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(c). Facts are "material" in a summary judgment analysis if they are outcome influencing under the substantive law governing the action. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute over facts found to be material is "genuine" if from the evidence a reasonable jury could find for the non-moving party. *See id.* at 248, 106 S.Ct. 2505. In the absence of such disputes, the outcome can be determined as a matter of law.

Plaintiff maintains that defendant's attempt to condemn its passing track is preempted by federal law. It asserts that the Interstate Commerce Commission Ter-

mination Act of 1995 ("the ICCTA") preempts the City's statutory authority to condemn the passing track. Defendant contends that the ICCTA does not reach a state's power of eminent domain exercised for the public health, welfare and safety.

Federal preemption doctrine is rooted in the Supremacy Clause which reads: "the Laws of the United States... shall be the Supreme Law of the Land... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. Pursuant to this provision Congress may preempt state law in the legitimate exercise of its legislative authority. *See Time Warner Cable v. Doyle,* 66 F.3d 867, 874 (7th Cir.1995) (citing *Louisiana Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 368, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986)).

Congressional preemption of state law can be either express or implied. *See Fidelity Federal Savings & Loan Assoc. v. De la Cuesta,* 458 U.S. 141, 152–53, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982). Preemption occurs in three circumstances: "(1) express preemption where Congress explicitly preempts state law; (2) implied preemption where Congress has occupied the entire field (field preemption); and (3) implied preemption where there is an actual conflict between federal and state law (conflict preemption)." *Gracia v. Volvo Europa Truck, N .V.,* 112 F.3d 291, 294 (7th Cir.1997) (citing *English v. General Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990)).

Regardless of the type of preemption asserted, the preemption analysis turns on intent—"the purpose of Congress is the ultimate touchstone." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992). Accordingly, the Court's task is to discern whether Congress had the intent to preempt state law. *Time Warner Cable,* 66 F.3d at 874. Further, the intent to preempt must be "clear and manifest" where the asserted preemption is of a subject traditionally governed by the states. *See Ophthalmic Mutual Ins. Co. v. Musser,* 143 F.3d 1062, 1066 (7th Cir. 1998).

### A. Express Preemption

Express preemption is explicit in the text of a federal statute. Congress may define expressly to what extent a federal statute preempts state or local law. *See DeHart v. Town of Austin,* 39 F.3d 718, 721 (7th Cir.1994). If a statute contains an express preemption clause the focus is on the plain wording of the clause. *See Time Warner Cable,* 66 F.3d at 875.

Effective January 1, 1996, the ICCTA extensively revised rail transportation law in the United States. The Act abolished the Interstate Commerce Commission (ICC) and replaced it with the Surface Transportation Board (STB). The Act generally re-codified existing law, but also made important changes in an effort to reduce regulation of the railroads.

The ICCTA has a preemption clause which provides: "Except as otherwise provided in this part, the remedies provided under this part with respect to the regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b)(2). "Transportation" is broadly defined in the ICCTA and includes:

(A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and

(B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration,

icing, ventilation, storage, handling, and interchange or passengers and property; 49 U.S.C. § 10102(9).

■ Courts that have considered the ICCTA preemption clause have found its language to be clear and broad. "It is difficult to imagine a broader statement of Congress' intent to preempt state regulatory authority over railroad operations." *CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n,* 944 F.Supp. 1573, 1581 (N.D.Ga. 1996); *see also City of Auburn v. United States Government,* 154 F.3d 1025, 1030 (9th Cir.1998). A Georgia district court stated that "[t]he most natural reading of section 10501(b)(2) is that federal remedies provided by the ICC Termination Act are the only remedies available as to the regulation of rail transportation, and that the federal remedies are exclusive of state remedies except where the ICC Act has expressly provided otherwise." *CSX Transp., Inc.,* 944 F.Supp. at 1581. The Circuit Court of Appeals for the Ninth Circuit held that the plain language of the ICCTA and the authority interpreting it supports a broad reading of Congress' preemptive intent. *See, e.g., City of Auburn,* 154 F.3d at 1030.

■ The Court agrees with these courts in their reading of the broad preemptive language of the ICCTA. The preemption provision makes all ICCTA remedies exclusive and explicitly preempts all other Federal and State remedies. It is clear that the ICCTA has preempted all state efforts to regulate rail transportation. *See City of Auburn,* 154 F.3d at 1030.

Defendant attempts to distinguish attempts to regulate railroads from exercises of state police power to promote public safety. It argues that its actions do not constitute "regulation" within the meaning of the ICCTA. According to defendant Congress intended only to preempt direct economic regulation of rail transportation by the States. In contrast, it characterizes its proposed action as a "relocation" of plaintiff's passing track in the interest of providing for highway safety.[1] Defendant relies on *Board of Hudson River Regulating District v. Fonda J & G Railway Co.,* 249 N.Y. 445, 164 N.E. 541 (1928), for the proposition that relocation of railroad property is not its regulation.

The ICCTA does not define "regulation" in section 10102. Nevertheless, the plain meaning is apparent. "Regulation" is the "act or process of controlling by rule or restriction." *See* Black's Law Dictionary 1289 (7th ed.1999).

The Court holds that condemnation is regulation. In using state law to condemn the track defendant is exercising control—the most extreme type of control—over rail transportation as it is defined in section 10102(9). Characterizing condemnation as relocation does not change this conclusion. Were the condemnation properly considered a relocation,[2] the act of forcing WCL to relocate its passing track is no less an exercise of control over transportation by the City through its laws than is outright condemnation. Defendant's reliance on *Board of Hudson River* is wholly misplaced.[3] The City is impermissibly at-

---

**1.** The Court notes that contrary to defendant's highway safety argument it has made no allegation nor shown facts in support of a finding that WCL's Marshfield passing track is dangerous or poses a threat to highway safety.

**2.** The Wisconsin statute is clearly a condemnation statute that nowhere provides for the relocation of condemned property. *See* Wis.

Stat. § 32.05. Moreover, defendant has not alleged that any relocation of the passing track will actually occur under its plan.

**3.** *Board of Hudson River* is not a preemption case. It does not concern the ICCTA's preemptive language or Congress' intent under the ICCTA. Its proposition that relocation is not regulation is unpersuasive.

tempting to subject to state law property that Congress specifically put out of reach.[4] Congress' preemptive language and intent is paramount, and the nature of the preempted state regulation is irrelevant. *See City of Auburn,* 154 F.3d at 1031 (citing *Metropolitan Life Ins. Co. v. Massachusetts,* 471 U.S. 724, 738, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985)).

The ICCTA expressly preempts more than just state laws specifically designed to regulate rail transportation. Environmental laws—statutes of general application—have been found to be expressly preempted under the ICCTA when applied to facilities and property constituting rail transportation. *See City of Auburn,* 154 F.3d at 1031. Limiting preemption to state laws aimed specifically at railroad regulation would arbitrarily limit the purposefully broad language chosen by Congress in the ICCTA.

### B. Field Preemption

 In addition to expressly preempting state law Congress can preempt the field in which the state law operates. Courts may infer an intent of Congress to preempt the field when a "pervasive scheme of federal regulation makes it reasonable to conclude that Congress intended exclusive federal regulation of the area." *DeHart,* 39 F.3d at 721.

The Staggers Rail Act, the predecessor of the ICCTA, had been recognized as one of the most pervasive and comprehensive federal regulatory schemes. *See CSX Transp., Inc.,* 944 F.Supp. at 1584 (citing *Illinois Commerce Comm'n v. ICC,* 879 F.2d 917, 921 (D.C.Cir.1989)). Yet, two

ICCTA amendments to the Staggers Rail Act expanded federal dominion over rail transportation. First, the ICCTA deleted policy statements concerning regulatory cooperation between federal and state authorities as well as a section providing for joint state-federal regulatory bodies. *See CSX Transp., Inc.,* 944 F.Supp. at 1584 (citing S.Rep. No. 176, 104th Cong., 1st Sess. 44 (1995)). Second, it expressly granted the STB exclusive jurisdiction over all matters of rail transportation, including intrastate railroad tracks. *See* 49 U.S.C. § 10501(b)(2). These changes eliminated the states' role in regulating rail transportation and are consistent with Congress' purpose of deregulating the railroads. The Court agrees with the court in *CSX Transp., Inc.,* which concluded:

> With the extension of exclusive federal jurisdiction over wholly intrastate tracks, one of the few railroad matters previously within the jurisdiction of the states, the ICC Termination Act evinces an intent by Congress to assume complete jurisdiction, to the exclusion of the states, over the regulation of railroad operations.

*CSX Transp., Inc.,* 944 F.Supp. at 1584 (citing H.R.Conf.Rep. No. 422, 104th Cong., 1st Sess. 167 (1995)).

By applying Wisconsin condemnation law to WCL's passing track the City has entered a field occupied exclusively by Congress. Congress has left the states without the ability to act in the expansively defined field of rail transportation. Congress has preempted the field.

---

**4.** Defendant's citation to *Union Pacific Railroad Co. v. State ex rel. Corp. Comm'n,* 990 P.2d 328 (Okl.Civ.App.1999) is inapposite. In *Union Pacific* the court held that the railroad right-of-way at issue did not constitute a "facility" under the ICCTA and was therefore subject to state regulation.

Here, defendant does not dispute that the ICCTA covers passing tracks such as the one at issue in Marshfield. The passing track clearly constitutes "property... related to the movement of... property... by rail." 49 U.S.C. § 10102.

## C. Conflict Preemption

■ Finally, a state law is preempted to the extent that it actually conflicts with federal law. *See English,* 496 U.S. at 79, 110 S.Ct. 2270. State law conflicts with federal law when state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *See id.* (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67, 61 S.Ct. 399, 85 L.Ed. 581 (1941)).

■ The purposes and objectives of Congress in passing the ICCTA are well established. The primary purpose of the ICCTA was to deregulate the railroads and foster competition among rail carriers. *See CSX Transp. Inc.,* 944 F.Supp. at 1583 (citing S.Rep. No. 176, 104th Cong., 1st Sess. 3 (1995)). The statute's policy statement says as much:

In regulating the railroad industry, it is the policy of the United States Government—

(1) To allow, to the maximum extent possible, competition and the demand for services to establish reasonable rates for transportation by rail;

(2) to minimize the need for Federal regulatory control over the rail transportation system;

\* \* \* \* \* \*

(4) to ensure the development and continuation of a sound rail transportation system with effective competition among rail carriers;

\* \* \* \* \* \*

(7) to reduce regulatory barriers to entry into and exit from the industry.

49 U.S.C. § 10101. The ICCTA's exclusion of state regulatory authority, its preemption of state remedies and its vesting of exclusive jurisdiction in the STB over all matters of rail transportation supports the conclusion that freeing the railroads from state and federal regulatory authority was the principal purpose of Congress.

Wisconsin's condemnation statute, when applied by municipalities to property constituting rail transportation, frustrates Congress' purpose and policy of deregulating the railroads and divesting states of their remaining authority over the railroads. This application of state law would mire the railroads in the very type of regulation from which Congress sought to free them. Under defendant's formulation every municipality in Wisconsin would have the ability to condemn or "relocate" any railroad property deemed to implicate public health or safety. Giving effect to the condemnation authority of municipalities over railroad property conflicts with Congress' purpose in enacting the ICCTA.

## Conclusion

Under the substantive law of federal preemption there are no material facts in dispute in this litigation. The operative facts are undisputed. It is undisputed that WCL is a "common carrier" and the passing track is "transportation" as both are defined by the ICCTA. In the absence of a genuine dispute the language of the ICCTA and the "clear and manifest" intent evinced by Congress require that plaintiff prevail as a matter of law on its federal preemption claim. Wisconsin's condemnation law, Chapter 32 of the Wisconsin Statutes, as applied to WCL's passing track in Marshfield, Wisconsin is without effect.

### ORDER

IT IS ORDERED that the plaintiff's motion for partial summary judgment is GRANTED.

IT IS FURTHER ORDERED that judgment be entered in favor of plaintiff against defendant declaring that defendant's application of its condemnation power under Wis. Stat. § 32.05 to plaintiff's passing track in Marshfield, Wisconsin is preempted by the Interstate Commerce

Commission Termination Act of 1995, with costs.