Vacated and Dismissed and Opinion filed June 21, 2007








Vacated and
Dismissed and Opinion filed
June 21, 2007.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-05-01106-CV

____________

 

FORT BEND COUNTY, TEXAS, Appellant

 

V.

 

THE BURLINGTON NORTHERN AND SANTA
FE RAILWAY COMPANY, Appellee

 



 

On Appeal from the County
Court at Law No. 3

Fort Bend County, Texas

Trial Court Cause No. 17181

 



 

O P I N I O N








Appellant, Fort Bend County, appeals the judgment awarding
the Burlington Northern and Santa Fe Railroad Company $90,756.51 as
reimbursement of expenditures in the adjustment and relocation of an eligible
utility facility, required by the County=s condemnation of
land for a larger railroad crossing.  In its sole issue, the County argues the
trial court erred in ordering the County to reimburse Burlington for its costs
in improving the crossing.  Burlington contends that, assuming the court had
jurisdiction, the award for the crossing was proper.  In four cross-issues,
Burlington argues: (1) the trial court erred in denying its plea to the
jurisdiction because the condemnation of a roadway easement across an active
passing track/staging facility is preempted under the Interstate Commerce
Commission Termination Act (AICCTA@);[1]
(2) the County=s failure to authorize the acquisition by condemnation
of the easement caused a lack of condemnation jurisdiction; (3) the trial court
erred in granting injunctive relief; and (4) the trial court erred in the
statutory construction of Section 251.102 of the Texas Transportation Code.[2] 
Because we find the County is federally preempted under the ICCTA from
condemning a public crossing that cuts Burlington=s passing track,
we vacate the trial court=s judgment and dismiss the case.

Our review of the trial court=s ruling on a plea
to the jurisdiction is de novo, as is our review of the court=s conclusions of
law and statutory interpretation.  Burlington N. & Santa Fe R.R. Co. v.
City of Houston, 171 S.W.3d 240, 245 (Tex. App.CHouston [14th
Dist.] 2005, no pet.).  Preemption of state law by federal law is rooted in the
Supremacy Clause of the United States Constitution.  U.S. Const. art. VI, cl. 2.  The Supreme Court has determined
that federal preemption can arise in three ways: (1) when Congress expressly
provides that state law is preempted, (2) when congressional intent to
exclusively occupy the field can be inferred from pervasive federal regulation,
and (3) when state law actually conflicts with federal law.  English v. Gen.
Elec. Co., 496 U.S. 72, 78B79 (1990).  Where a statute contains a
specific preemption clause, as does the ICCTA, that clause becomes the focus of
our analysis.  Friberg v. Kansas City S. Ry. Co., 267 F.3d 439, 442 (5th
Cir. 2001). 

The ICCTA section
entitled AGeneral Jurisdiction@ states, in
relevant part:

(b) The jurisdiction of the Board over‑








(1) transportation by rail carriers, and the
remedies provided in this part with respect to rates, classifications, rules
(including car service, interchange, and other operating rules), practices,
routes, services, and facilities of such carriers; and

(2) the construction, acquisition, operation,
abandonment, or discontinuance of spur, industrial, team, switching, or side
tracks, or facilities, even if the tracks are located, or intended to be
located, entirely in one State, is exclusive. Except as otherwise provided in
this part, the remedies provided under this part with respect to regulation of
rail transportation are exclusive and preempt the remedies provided under
Federal or State law.

49 U.S.C. ' 10501. 

ATransportation@ is broadly
defined in the ICCTA and includes:

(A) a locomotive, car, vehicle, vessel, warehouse,
wharf, pier, dock, yard, property, facility, instrumentality, or equipment of
any kind related to the movement of passengers or property, or both, by rail,
regardless of ownership or an agreement concerning use; and

(B) services related to that movement, including
receipt, delivery, elevation, transfer in transit, refrigeration, icing,
ventilation, storage, handling, and interchange of passengers and property; 

49 U.S.C. '10102(9).








As the Fifth Circuit stated in Friberg, A[t]he language of
the statute could not be more precise,@ and it is beyond
doubt that regulation of train operations, as well as the construction and
operation of side tracks, is under the exclusive jurisdiction of the STB unless
some provision in the ICCTA provides otherwise.  267 F.3d at 443.  Courts have
consistently interpreted this preemption language to be broad in scope.  See
City of Auburn v. United States, 154 F.3d 1025, 1030B31 (9th Cir. 1998)
(reviewing the history of railway preemption, text of the ICCTA, and court
decisions to reject the argument that preemption is limited to economic
regulation).  Indeed, A[i]t is difficult to imagine a broader
statement of Congress=s intent to preempt state regulatory
authority over railroad operations.@ CSX Transp.,
Inc. v. Georgia Pub. Serv. Comm'n, 944 F. Supp. 1573, 1581 (N.D. Ga.
1996).  Accordingly, under principles of express and conflict preemption,
courts have found that state laws that constitute regulation of a railroad are
preempted.  See, e.g.,  Friberg, 267 F.3d at 443; City of
Auburn, 154 F.3d at 1031; Wis. Cent. Ltd. v. City of Marshfield, 160
F. Supp. 2d 1009, 1013B14 (W.D. Wis. 2000).  The remedies
provided under 49 U.S.C. '10501(b)(2) are exclusive and preempt
remedies provided under state law.  Wis. Cent. Ltd., 160 F. Supp. 2d at
1015. 

A passing track is an integral component in the operation
of a single-track line as it enables multiple trains to use one main track by
allowing trains on the same track heading in opposite directions to pass each
other.  Id. at 1011.  A passing track is Atransportation@ as defined by the
ICCTA.  Id. at 1015.  Burlington operated a private
crossing that housed a Aregular@ railroad track
and the Booth passing track.  The passing track is utilized by Burlington to
stage meets and passes of trains for its rail operations, and to park coal
trains for the Houston Lighting and Power Smithers Lake facility.[3] 
The County condemned the crossing and made it a public crossing with a four
lane boulevard and esplanade for use as an entrance to a planned private
residential development.[4] 
This crossing cuts the Booth passing track into two almost equal pieces.  The
Harrison crossing, available to access the proposed development, was an
existing public crossing located at one end of the Booth passing track.[5] 
The Harrison crossing does not bisect the Booth passing track.








In support of its position that there is no preemption
question, the County relies on Maumee & W. R.R. Corp. and RMW Ventures,
L.L.C. B Petition for Declaratory Order, 2004 WL 395835
(S.T.B. March 2, 2004).  The County misinterprets Maumee.  The County
argues Maumee states that all condemnation proceedings, for the purpose
of erecting a public crossway, are not preempted by the ICCTA.  To the
contrary, Maumee states routine crossings with non-conflicting uses are
not preempted so long as they would not impede rail operations or pose undue
safety risks.  Id. at *2.  

However, here we are not considering a typical, routine
crossing with a non-conflicting use.  The record shows the crossing condemned
by the County cuts through the Booth passing trackCa track used by
Burlington to meet and pass trains, to park 8500 feet long coal trains bound
for the Smithers Lake facility, and as a staging area for the surrounding 30
miles.  In order to recover what it had prior to the takingCa 1.86 mile (9820
feet) uncut passing track necessary to railroad operationsCBurlington must
move part of the passing track, or the crossing must be returned to its
original configuration as a private crossing.  The Supreme Court found a
Commerce Clause violation when a drainage district attempted to force a
railroad to either tear out a bridge or raise the elevation of the bridge.  Kansas
City S. Ry. Co. v. Kaw Valley Drainage Dist. of Wyandotte County, Kan., 233
U.S. 75, 78B79 (1911).  The Court determined that the operation of
the Commerce Clause rule Acannot be avoided by simply invoking the
convenient apologetics of the police power.@  Id. at
79.  Moreover, the Court stated nothing can be done to the railroad=s property that
will directly burden or impede the interstate traffic of the company, or impair
the usefulness of its facilities for such traffic.  Id.  








There is ample evidence in the record that placing the
public crossing over the regular and passing tracks would interfere with
railroad operations and cause safety hazards.[6] 
Burlington presented affidavits and testimony detailing how the placement of
the Royal Lakes crossing interferes with its railroad operations.  Burlington
showed, among other problems, the following:  the Booth passing track is the
only uncut passing track within 30 miles; because of the placement of the
crossing, Burlington has lost capacity due to loss of time; it is necessary to
railroad operations to have this piece of track unencumbered and, therefore, it
needs to move a portion of the track or take out the crossing; and the
placement of the crossing has affected the entire line.  Burlington also showed
it parked coal trains destined for the Houston Lighting and Power facility at
Smithers Lake on the passing track, approximately four out of seven days a
week; these trains would block the crossing for extended periods of time; and
Burlington is paid a fee based on the number of trains it is able to park on
the passing track.  








Moreover, Burlington presented evidence that, by law, it
must break any train that blocks a public crossing for longer than 10
minutes; the County sent the sheriff out to force it to break the trains on
several occasions at the Royal Lakes crossing; and when trains are broken,
there is a delay of approximately 45 minutes for the re‑connection. 
Other evidence showed that if the train sits broken for longer than four hours,
a federal law is triggered specifying that a brake test must be done before
moving the train.  This federal brake test delays the train approximately 90
minutes, blocking the crossing during re‑connection and the mandatory
brake test.  Burlington presented evidence that showed citizens worry about how
emergency vehicles would get past the blocked crossing.  Burlington stated,
when using the Booth track to pass trains, other trains may have to be broken
and the same time added to their connection, causing scheduling problems and
time delays throughout the line, not just at the Booth passing track. 
Additionally, Burlington produced evidence of citizens= complaints that
when broken trains sat approximately 140 feet from the crossing, it caused a
visual hazard and, therefore, the trains needed to be parked at least 250 feet
from each side so drivers could see past both tracks.  To park the trains
farther from the crossing would take away the use of an additional 220
aggregate feet of the passing track. 

Burlington does not argue, and we do not hold, that the
entire field of eminent domain law is preempted.  However, when state eminent domain
law amounts to a regulation of the railroad, it is expressly preempted.  Burlington
N. & Santa Fe R.R. Co., 171 S.W.3d at 249.  A state law may not impose
operating limitations on a railroad=s economic decisions such as those
pertaining to train length, speed, or scheduling.[7] 
Friberg, 267 F.3d at 443B44.  Moreover, when a law has the effect of requiring
the railroad to undergo substantial capital improvements, it is preempted by
the ICCTA.  CSX Transp., Inc. v. City of Plymouth, 92 F. Supp. 2d
643, 659 (E.D. Mich. 2000).








Here, the County chose to sever the Booth passing track
instead of expanding the public Harrison crossing.  According to the evidence
presented, the condemnation has the effect of regulating Burlington now and in
the future by affecting the speed and length of its trains.  Additionally,
Burlington presented evidence that showed the need of an uninterrupted passing
track at Booth for future operations, that the crossing interferes with current
railroad operations, and that the crossing causes more federally-mandated air
brake tests and has a negative economic effect on the railroad.[8] 
Condemnation is a permanent action, and A>it can never be
stated with certainty at what time any particular part of a right of way may
become necessary for railroad uses.=@ City of
Lincoln v. Surface Transp. Bd., 414 F.3d 858, 862 (8th Cir. 2005) (quoting Midland
Valley R.R. Co. v. Jarvis, 29 F.2d 539, 541 (8th Cir. 1928)).  

The enlarged crossing, bisecting Burlington=s passing track
with a four-lane boulevard street and esplanade, would impermissibly interfere
with railroad operations and, thus, is preempted.  Burlington=s first
cross-issue is sustained; accordingly, we need not address the remaining
issues.  The trial court=s judgment is vacated and the cause
dismissed.

 

 

 

 

 

 

/s/      J. Harvey Hudson

Justice

 

 

 

 

 

 

 

Judgment rendered
and Opinion filed June 21, 2007.

Panel consists of
Justices Yates, Anderson, and Hudson.









[1]  In 1995, Congress passed the ICCTA, which reinforced
the federal government=s continued goals Ato
promote a safe and efficient rail transportation system@ and Ato endure
development and continuation of a sound rail transportation system with
effective competition among rail carriers.@ 
49 U.S.C. ' 10101(3), (4) (2000).  To accomplish these and other
goals, the ICCTA abolished the former Interstate Commerce Commission and
created the Surface Transportation Board (ASTB@), which has exclusives jurisdiction over
transportation by rail carriers and the construction and operation of rail
tracks.  Id. ' 10501(b).





[2]  Tex. Transp.
Code Ann. ' 251.102 (Vernon 1999).





[3]  In order to facilitate train travel on one set of
tracks, trains must be switched to a passing track to allow other trains to
continue on the single track.  The Booth passing track is the only uncut
passing track of that length within 30 miles, and it serves the area from Temple
to Galveston with trains continuing to Los Angeles.





[4]  This crossing is now also referred to as the Royal
Lakes crossing.





[5]  After the opening of the Royal Lakes crossing, the
Harrison crossing was converted to a private crossing.





[6]  After the County indicated it wanted to condemn a
crossing over the Booth passing track, Burlington filed a motion for injunctive
relief in federal district court in an attempt to stop the condemnation.  The
County argued no taking had occurred because no condemnation proceeding had
occurred at that point.  The district court dismissed without prejudice
Burlington=s federal taking claim, due process claim, Commerce
Clause claim, challenge to the Neighborhood Roads Statute, and the state
takings and inverse condemnation claims because they were not ripe for
decision.  In doing so, the federal district court observed:

. . . although the Harrison Crossing location may have
its own set of issues and costs to the property owners, developers and the
public, it is hard to understand why Defendants insist on pursuing a crossing
over two active railway lines that will interfere with railroad
operations [emphasis added] when other viable entrances to the development
are physically available.  It furthermore is unclear why the Fort Bend County
residents who live in or seek to visit the new development would want to
negotiate their vehicles over a road that crosses two railroad tracks with
frequent train traffic.  Finally it is unimaginable that the County would
create a public road that in fact results in safety hazards [emphasis
added] to the County=s citizens.  Thus, the Court anticipates that the
concerns expressed by Burlington will

be fully considered during the
road-planning process.

Burlington N. & Santa Fe R.R.. Co. v. Childers as
Fort Bend County Attorney, No.
H-98-0653 (S.D. Tex. July 13, 1998) (order denying plaintiff=s motion for injunctive relief) (emphasis added where
noted).





[7]  Statutes and ordinances that impact a train=s speed, length, and schedule have
been found to have concomitant economic ramifications and, thus, are deemed to
address areas under the jurisdiction of the STB.  Eagle Marine Indus., Inc.
v. Union Pac. R.R. Co., 845 N.E.2d 869, 881 (Ill. App. Ct. 5 Dist. 2006).

 





[8]  The County offered alternatives as adjustments to
the newly disrupted passing track, suggesting Burlington pay to relocate the
track, slow or speed up the trains, pass and meet at another facility, or
receive less money by parking fewer coal trains.  The County also opined if the
federal air brake test became necessary, Burlington could speed up its trains
and make up the time down the line.  The County's suggestions may not be
imposed or accepted as a solution because they have the effect of regulating
Burlington.