**FORT BEND COUNTY,**
Texas, Appellant,

v.

**THE BURLINGTON NORTHERN
AND SANTA FE RAILWAY
COMPANY, Appellee.**

No. 14–05–01106–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

June 21, 2007.

Rehearing Overruled Nov. 8, 2007.

**356**

William S. Helfand, Barbara E. Roberts, Kevin D. Jewell, Steven Jon Knight, Houston, for appellant.

Daniel R. McCabe, Jeffrey J. Wolf, Southlake, for appellee.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

J. HARVEY HUDSON, Justice.

Appellant, Fort Bend County, appeals the judgment awarding the Burlington Northern and Santa Fe Railroad Company $90,756.51 as reimbursement of expenditures in the adjustment and relocation of an eligible utility facility, required by the County's condemnation of land for a larger railroad crossing. In its sole issue, the County argues the trial court erred in ordering the County to reimburse Burlington for its costs in improving the crossing. Burlington contends that, assuming the court had jurisdiction, the award for the crossing was proper. In four cross-issues, Burlington argues: (1) the trial court erred in denying its plea to the jurisdiction because the condemnation of a roadway easement across an active passing track/staging facility is preempted under the Interstate Commerce Commission Termination Act ("ICCTA");[1] (2) the County's failure to authorize the acquisition by condemnation of the easement caused a lack of condemnation jurisdiction; (3) the trial court erred in granting injunctive relief; and (4) the trial court erred in the statutory construction of Section 251.102 of

---

1. In 1995, Congress passed the ICCTA, which reinforced the federal government's continued goals "to promote a safe and efficient rail transportation system" and "to endure development and continuation of a sound rail transportation system with effective competition among rail carriers." 49 U.S.C. § 10101(3), (4) (2000). To accomplish these and other goals, the ICCTA abolished the former Interstate Commerce Commission and created the Surface Transportation Board ("STB"), which has exclusive jurisdiction over transportation by rail carriers and the construction and operation of rail tracks. *Id.* § 10501(b).

the Texas Transportation Code.[2] Because we find the County is federally preempted under the ICCTA from condemning a public crossing that cuts Burlington's passing track, we vacate the trial court's judgment and dismiss the case.

■ Our review of the trial court's ruling on a plea to the jurisdiction is de novo, as is our review of the court's conclusions of law and statutory interpretation. *Burlington N. & Santa Fe Ry. Co. v. City of Houston,* 171 S.W.3d 240, 245 (Tex.App.-Houston [14th Dist.] 2005, no pet.). Preemption of state law by federal law is rooted in the Supremacy Clause of the United States Constitution. U.S. CONST. ART. VI, CL. 2. The Supreme Court has determined that federal preemption can arise in three ways: (1) when Congress expressly provides that state law is preempted, (2) when congressional intent to exclusively occupy the field can be inferred from pervasive federal regulation, and (3) when state law actually conflicts with federal law. *English v. Gen. Elec. Co.,* 496 U.S. 72, 78–79, 110 S.Ct. 2270, 110 L.Ed.2d 65 (1990). Where a statute contains a specific preemption clause, as does the ICCTA, that clause becomes the focus of our analysis. *Friberg v. Kansas City S. Ry. Co.,* 267 F.3d 439, 442 (5th Cir.2001).

The ICCTA section entitled "General Jurisdiction" states, in relevant part:

(b) The jurisdiction of the Board over—

(1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and

(2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State, is exclusive. Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501.

"Transportation" is broadly defined in the ICCTA and includes:

(A) a locomotive, car, vehicle, vessel, warehouse, wharf, pier, dock, yard, property, facility, instrumentality, or equipment of any kind related to the movement of passengers or property, or both, by rail, regardless of ownership or an agreement concerning use; and

(B) services related to that movement, including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property;

49 U.S.C. § 10102(9).

As the Fifth Circuit stated in *Friberg,* "[t]he language of the statute could not be more precise," and it is beyond doubt that regulation of train operations, as well as the construction and operation of side tracks, is under the exclusive jurisdiction of the STB unless some provision in the ICCTA provides otherwise. 267 F.3d at 443. Courts have consistently interpreted this preemption language to be broad in scope. *See City of Auburn v. United States,* 154 F.3d 1025, 1030–31 (9th Cir. 1998) (reviewing the history of railway preemption, text of the ICCTA, and court decisions to reject the argument that preemption is limited to economic regulation). Indeed, "[i]t is difficult to imagine a broader statement of Congress's intent to

---

**2.** TEX. TRANSP. CODE ANN. § 251.102 (Vernon 1999).

preempt state regulatory authority over railroad operations." *CSX Transp., Inc. v. Georgia Pub. Serv. Comm'n,* 944 F.Supp. 1573, 1581 (N.D.Ga.1996). Accordingly, under principles of express and conflict preemption, courts have found that state laws that constitute regulation of a railroad are preempted. *See, e.g., Friberg,* 267 F.3d at 443; *City of Auburn,* 154 F.3d at 1031; *Wis. Cent. Ltd. v. City of Marshfield,* 160 F.Supp.2d 1009, 1013–14 (W.D.Wis.2000). The remedies provided under 49 U.S.C. § 10501(b)(2) are exclusive and preempt remedies provided under state law. *Wis. Cent. Ltd.,* 160 F.Supp.2d at 1015.

■ A passing track is an integral component in the operation of a single-track line as it enables multiple trains to use one main track by allowing trains on the same track heading in opposite directions to pass each other. *Id.* at 1011. A passing track is "transportation" as defined by the ICCTA. *Id.* at 1015. Burlington operated a *private* crossing that housed a "regular" railroad track and the Booth passing track. The passing track is utilized by Burlington to stage meets and passes of trains for its rail operations, and to park coal trains for the Houston Lighting and Power Smithers Lake facility.[3] The County condemned the crossing and made it a public crossing with a four lane boulevard and esplanade for use as an entrance to a planned private residential development.[4] This crossing cuts the Booth passing track into two almost equal pieces. The Harrison crossing, available to access the proposed development, was an existing public crossing lo-

cated at one end of the Booth passing track.[5] The Harrison crossing does not bisect the Booth passing track.

In support of its position that there is no preemption question, the County relies on *Maumee & W. R.R. Corp. and RMW Ventures, L.L.C.*—Petition for Declaratory Order, 2004 WL 395835 (S.T.B. March 2, 2004). The County misinterprets *Maumee.* The County argues *Maumee* states that all condemnation proceedings, for the purpose of erecting a public crossway, are not preempted by the ICCTA. To the contrary, *Maumee* states *routine crossings with non-conflicting uses* are not preempted so long as they would not *impede rail operations or pose undue safety risks. Id.* at *2.

However, here we are not considering a typical, routine crossing with a non-conflicting use. The record shows the crossing condemned by the County cuts through the Booth passing track—a track used by Burlington to meet and pass trains, to park 8500 feet long coal trains bound for the Smithers Lake facility, and as a staging area for the surrounding 30 miles. In order to recover what it had prior to the taking—a 1.86 mile (9820 feet) uncut passing track necessary to railroad operations—Burlington must move part of the passing track, or the crossing must be returned to its original configuration as a private crossing. The Supreme Court found a Commerce Clause violation when a drainage district attempted to force a railroad to either tear out a bridge or raise the elevation of the bridge. *Kansas City S. Ry. Co. v. Kaw Valley Drainage Dist. of*

---

3. In order to facilitate train travel on one set of tracks, trains must be switched to a passing track to allow other trains to continue on the single track. The Booth passing track is the only uncut passing track of that length within 30 miles, and it serves the area from Temple to Galveston with trains continuing to Los Angeles.

4. This crossing is now also referred to as the Royal Lakes crossing.

5. After the opening of the Royal Lakes crossing, the Harrison crossing was converted to a private crossing.

*Wyandotte County, Kan.*, 233 U.S. 75, 78–79, 34 S.Ct. 564, 58 L.Ed. 857 (1914). The Court determined that the operation of the Commerce Clause rule "cannot be avoided by simply invoking the convenient apologetics of the police power." *Id.* at 79, 34 S.Ct. 564. Moreover, the Court stated nothing can be done to the railroad's property that will directly burden or impede the interstate traffic of the company, or impair the usefulness of its facilities for such traffic. *Id.*

■ There is ample evidence in the record that placing the public crossing over the regular and passing tracks would interfere with railroad operations and cause safety hazards.[6] Burlington presented affidavits and testimony detailing how the placement of the Royal Lakes crossing interferes with its railroad operations. Burlington showed, among other problems, the following: the Booth passing track is the only uncut passing track within 30 miles; because of the placement of the crossing, Burlington has lost capacity due to loss of time; it is necessary to railroad operations to have this piece of track unencumbered and, therefore, it needs to move a portion of the track or take out the crossing; and the placement of the crossing has affected the entire line. Burlington also showed it parked coal trains destined for the Houston Lighting and Power facility at Smithers Lake on the passing track, approximately four out of seven days a week; these trains would block the crossing for extended periods of time; and Burlington is paid a fee based on the number of trains it is able to park on the passing track.

Moreover, Burlington presented evidence that, by law, it must break any train that blocks a *public* crossing for longer than 10 minutes; the County sent the sheriff out to force it to break the trains on several occasions at the Royal Lakes crossing; and when trains are broken, there is a delay of approximately 45 minutes for the re-connection. Other evidence showed that if the train sits broken for longer than four hours, a federal law is triggered specifying that a brake test must be done before moving the train. This federal brake test delays the train approximately 90 minutes, blocking the crossing during re-connection and the mandatory brake test. Burlington presented evidence

6. After the County indicated it wanted to condemn a crossing over the Booth passing track, Burlington filed a motion for injunctive relief in federal district court in an attempt to stop the condemnation. The County argued no taking had occurred because no condemnation proceeding had occurred at that point. The district court dismissed without prejudice Burlington's federal taking claim, due process claim, Commerce Clause claim, challenge to the Neighborhood Roads Statute, and the state takings and inverse condemnation claims because they were not ripe for decision. In doing so, the federal district court observed:

... although the Harrison Crossing location may have its own set of issues and costs to the property owners, developers and the public, it is hard to understand why Defendants insist on pursuing a crossing over two *active* railway lines that *will interfere with railroad operations* [emphasis added] when other viable entrances to the development are physically available. It furthermore is unclear why the Fort Bend County residents who live in or seek to visit the new development would want to negotiate their vehicles over a road that crosses two railroad tracks with frequent train traffic. Finally it is unimaginable that the County would create a public road *that in fact results in safety hazards* [emphasis added] to the County's citizens. Thus, the Court anticipates that the concerns expressed by Burlington will be fully considered during the road-planning process.

*Burlington N. & Santa Fe R.R. Co. v. Childers as Fort Bend County Attorney*, No. H–98–0653 (S.D.Tex. July 13, 1998) (order denying plaintiff's motion for injunctive relief) (emphasis added where noted).

that showed citizens worry about how emergency vehicles would get past the blocked crossing. Burlington stated, when using the Booth track to pass trains, other trains may have to be broken and the same time added to their connection, causing scheduling problems and time delays throughout the line, not just at the Booth passing track. Additionally, Burlington produced evidence of citizens' complaints that when broken trains sat approximately 140 feet from the crossing, it caused a visual hazard and, therefore, the trains needed to be parked at least 250 feet from each side so drivers could see past both tracks. To park the trains farther from the crossing would take away the use of an additional 220 aggregate feet of the passing track.

Burlington does not argue, and we do not hold, that the entire field of eminent domain law is preempted. However, when state eminent domain law amounts to a regulation of the railroad, it is expressly preempted. *Burlington N. & Santa Fe Ry. Co.,* 171 S.W.3d at 249. A state law may not impose operating limitations on a railroad's economic decisions such as those pertaining to train length, speed, or scheduling.[7] *Friberg,* 267 F.3d at 443–44. Moreover, when a law has the *effect* of requiring the railroad to undergo substantial capital improvements, it is preempted by the ICCTA. *CSX Transp., Inc. v. City of Plymouth,* 92 F.Supp.2d 643, 659 (E.D.Mich.2000).

Here, the County chose to sever the Booth passing track instead of expanding the public Harrison crossing. According to the evidence presented, the condemnation has the effect of regulating Burlington now and in the future by affecting the speed and length of its trains. Additionally, Burlington presented evidence that showed the need of an uninterrupted passing track at Booth for future operations, that the crossing interferes with current railroad operations, and that the crossing causes more federally-mandated air brake tests and has a negative economic effect on the railroad.[8] Condemnation is a permanent action, and " 'it can never be stated with certainty at what time any particular part of a right of way may become necessary for railroad uses.' " *City of Lincoln v. Surface Transp. Bd.,* 414 F.3d 858, 862 (8th Cir.2005) (quoting *Midland Valley R.R. Co. v. Jarvis,* 29 F.2d 539, 541 (8th Cir.1928)).

The enlarged crossing, bisecting Burlington's passing track with a four-lane boulevard street and esplanade, would impermissibly interfere with railroad operations and, thus, is preempted. Burlington's first cross-issue is sustained; accordingly, we need not address the remaining issues. The trial court's judgment is vacated and the cause dismissed.

7. Statutes and ordinances that impact a train's speed, length, and schedule have been found to have concomitant economic ramifications and, thus, are deemed to address areas under the jurisdiction of the STB. *Eagle Marine Indus., Inc. v. Union Pac. R.R. Co.,* 363 Ill.App.3d 1166, 301 Ill.Dec. 4, 845 N.E.2d 869, 881 (Ill.App.Ct. 5 Dist.2006).

8. The County offered alternatives as adjustments to the newly disrupted passing track, suggesting Burlington pay to relocate the track, slow or speed up the trains, pass and meet at another facility, or receive less money by parking fewer coal trains. The County also opined if the federal air brake test became necessary, Burlington could speed up its trains and make up the time down the line. The County's suggestions may not be imposed or accepted as a solution because they have the effect of regulating Burlington.